KELLUM, Judge,
concurring in part and concurring in the result.
I concur in all parts of the main opinion except Part III. As to Part III, I concur in the result only.

On Return to Second Remand 
*

JOINER, Judge.
On May 2, 2014, this Court affirmed Michael Bragg Woolfs conviction for two counts of capital murder for killing his wife, Angel Marie Woolf, and their two-year-old son, Charles Ayden Woolf (“Ayden”). Woolf v. State, 220 So.3d 338, 388 (Ala.Crim.App.2014); see § 13A-5-40(a)(10), Ala.Code 1975 (making capital the killing of two or more persons by one act or pursuant to one scheme or course of conduct), and § 13A-5-40(a)(15), Ala.Code 1975 (making capital the killing of a victim less than 14 years of age). This Court, however, remanded “this case for the circuit court to amend its sentencing order to clarify its findings regarding the nonstatu- *389 tory mitigating circumstances” and to “reweigh the aggravating and mitigating circumstances and resentence Woolf.” Woolf, 220 So.3d at 388.
On remand, the circuit court held a re-sentencing hearing on May 15, 2014, at which it read, in open court, its amended sentencing order sentencing Woolf to death. On return to remand, this Court noticed a discrepancy between the written amended sentencing order of May 15, 2014, and the reporter’s transcript of the hearing at which the circuit court read its amended sentencing order. Specifically, the written amended sentencing order states: “1. [Woolf] was under a sentence of imprisonment when he committed the capital offenses. Therefore, [§] 13A-5-49(l), Code of Alabama (1975) does not apply and is not considered.” (Record on Return to Remand, C. 133 (emphasis added).) At the hearing, however, the circuit court stated: “1. [Woolf] was under a sentence of imprisonment when he committed the capital offenses. Therefore, the Alabama Code Section 13A-5-49(l) does exist and is being considered.” (Record on Return to Remand, R. 18 (emphasis added).) Accordingly, on March 19, 2015, we remanded the case by order for the circuit court to clarify this discrepancy. See Rule 10(g), Ala. R.App. P.; Rule 29, Ala. R.Crim. P.; see also Sims v. State, 741 So.2d 1117 (Ala.Crim.App.1999). On return to second remand, the circuit court has submitted a “clarification of amended sentencing order” in which it amended paragraph 1 of the amended sentencing order to read: “1. [Woolf] was under a sentence of imprisonment when he committed the capital offenses. Therefore, the Alabama Code Section 13A-5-49(l) does exist and is being considered.”[1] (Record on Return to Second Remand, C. 17.)
In its amended sentencing order as clarified, the circuit court found that the State proved the existence of two aggravating circumstances: (1) That Woolf was under a sentence of imprisonment when he committed the murders and (2) that Woolf intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct. See §§ 13A-6-47(d), 13A-5-49(1), and 13A-5-49(9), Ala.Code 1975.
As to the statutory mitigating circumstances, the circuit court found none to exist. See §§ 13A-5-47(d) and 13A-5-51, Ala.Code 1975.
As to the evidence regarding nonstatuto-ry mitigating circumstances, the circuit court stated:
*390 “[Woolf] has claimed that he has abused alcohol and drugs throughout his ■life. The Court finds that this non-statutory mitigating circumstance does exist.
“[Woolfs] attorneys have raised and offered the testimony of Dr. Tom Bennett that [Woolf] has a learning disability, probably ADD or ADHD. The Court finds that this non-statutory miti- , gating circumstance does exist.
“Additionally, Dr, Bennett testified that [Woolf] has a Borderline Personality disorder and is possibly bipolar. The Court finds that this non-statutory mitigating circumstance does exist.
“Additionally, the defense offers Dr. Bennett’s opinion that [Woolf] has a low I.Q. of 74; However, in the end Dr. Bennett testified that [Woolf] did not meet the legal standard for not guilty by ' reason of mental disease or defect. The Court has had [Woolf]- evaluated by Doug McKeown, Ph.D., a clinical psychologist, who has reported that [Woolf] is functioning in the normal intelligence range and is competent to. stand trial. The Court is also of that opinion. The Court has considered this and taken that opinion.and Dr. Bennett’s opinion into account. Taking both expert opinions into account the Court finds that this non-statutory mitigating circumstance does not exist.
“[Woolfs] mother, Mrs. Lynn Tullos, testified at the hearing on February 4, 2011. She stood in stark contrast to her son. She was a very proper, well mannered, middle class lady, deeply affected by the events her son caused. She told of her efforts to get him proper help in school-for some undiagnosed learning disability and all the obstacles she faced trying to get him help becáuse she felt something was wrong with him. Additionally, the emotional coldness, of [Woolfs] father, his lack of empathy, lack of emotions and, in general, partially dysfunctional family background partially 'contributed to [Woolfs] own unstable relationships. The Court finds that this non-statutory mitigating circumstance does exist.”
(Record on Return to Remand, C. 136-37.)
The circuit court also noted that it gave “due consideration and weight” to the jury’s 11-1 vote recommending a death sentence. (C. 137.) The circuit court thereafter reweighed the aggravating circumstances and the mitigating circumstances and, as noted, again sentenced Woolf to death.
This Court granted Woolfs motion for leave to file a .brief on return to remand to address the circuit court’s amended sentencing order; both Woolf and the State submitted briefs addressing the amended sentencing order.
In his brief on return to remand, Woolf identifies three issues.
I.
Woolf argues first that “the trial court failed to consider the mitigating circumstance that Mr. Woolf has a low IQ.” (Woolfs brief, p. 9.) Woolf contends that the evidence of his low IQ was “undisputed.” He argues that the circuit court’s alleged “fail[ure] to consider” this evidence is in conflict with decisions of the United States Supreme Court such as Tennard v. Dretke, 542 U.S. 274, 287, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004), and Hall v. Florida, — U.S, -, 134 .S.Ct. 1986, 188 L.Ed.2d 1007 (2014), and decisions of the Alabama Supreme Court such as Scott v. State, 937 So.2d 1065 (Ala.Crim.App.2005). This argument is without merit.
In Stanley v. State, 143 So.3d 230 (Ala. Crim.App.2011), this Court addressed a similar claim regarding the circuit court’s *391 alleged failure to consider' evidence presented during the penalty phase of that case and its refusal to find that evidence mitigating under the circumstances of the case. We stated:
In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the United States Supreme Court held that in a capital case, the sentencer — the trial court in this case — may not ‘be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that [Woolf] proffers as a basis for a sentence less than death.’ 438 U.S. at 604, 98 S.Ct. 2954. See also Eddings v. Oklahoma, 455 U.S. 104, 113-14, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (noting that ‘the State may not by statute preclude the sentencer from considering any mitigating factor’).
“In Thompson v. State, 153 So.3d 84, 189 (Ala.Crim.App.2012), this Court stated:
“““While Lockett [v. Ohio, 438 U.S. 586 (1978),] and its progeny require consideration of all evidence submitted as mitigation, ivhether the evidence is actually found to be mitigating is in the discretion of the sentencing authority’ ” Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996) (quoting Bankhead v. State, 585 So.2d 97, 108 (Ala.Crim.App.1989)). “The weight to be attached to the ... mitigating evidence is strictly within the discretion of the sentencing authority.” Smith v. State, 908 So.2d 273, 298 (Ala.Crim. App.2000).
“““[T]he sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and- he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require: that specific weights be assigned to different aggravating and mitigating . circumstances. Murry v. State, 455 So.2d 53 (Ala.Cr.App.1983), rev’d on other grounds, 455 So.2d 72 .(Ala. 1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir. 1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves thé gravity of the aggravation as compared to the mitigation.’”
“‘Bush v.-State, 695 So.2d 70, 94 (Ala.Crim.App.1995) (quoting Clisby v. State, 456 So.2d 99, 102 (Ala.Crim. App.1983)). See also Douglas v. State, 878 So.2d 1246, 1260 (Fla.2004) (“We conclude that the trial court did not abuse its discretion in giving little weight to the mitigating facts relating to [the defendant’s] abusive childhood.”); Hines v. State, 856 N.E.2d 1275, 1282-83 (Ind.App.2006) (“The trial court is not obliged to weigh or credit mitigating factors the way a defendant suggests.... [or] to afford any weight to [the defendant’s] childhood history as a mitigating factor in that [the defendant] never established why his past victimization led to his current behavior.”).’
“(Emphasis added.)
[[Image here]]
“Stanley’s argument is that a trial court’s failure to find a: mitigating circumstancebased on certain mitigating evidence necessarily means thát the trial court did not consider that mitigating evidence. Stanley thus conflates the concept of considering mitigating evidence with finding that a mitigating cir *392 cumstance actually exists in a particular case. This argument has been rejected. See, e.g., Ex parte Hart, 612 So.2d 536, 542 (Ala.1992) (‘Lockett does not require that all evidence offered as mitigating evidence be found to be mitigating. Lockett provides that a state may not exclude evidence that the defendant claims is mitigating. This does not mean that all evidence offered by the defendant as mitigating must be found to be mitigating and considered as such in the sentencing process.’ (emphasis added)); Ex parte Ferguson, 814 So.2d 970, 976 (Ala.2001); Ex parte Trawick, 698 So.2d 162, 177 (Ala.1997); Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996); Spencer, 58 So.3d at 257.
“Here, although the trial court specifically noted that it considered Stanley’s family history — including all the various evidence discussed in more detail in Part III such as Stanley’s drug and alcohol use and his childhood poverty — the trial court ultimately found that this evidence did not constitute a mitigating circumstance under the particular facts of this case.
“Stanley asserts that ‘there was no factual dispute about the existence of these circumstances.’ (Stanley’s reply brief, p. 13.) The trial court’s stated reasons for concluding that this evidence, under the particular circumstances, was not mitigating were (1) Stanley’s sisters faced the same difficult family background but went on to live successful lives, and (2) as the mitigation specialist testified, many individuals come from bad family backgrounds but do not commit capital murder. (RTR C. 215.) Thus, the trial court had evidence before it that called into question whether the evidence Stanley presented was in fact mitigating. See, e.g., Thompson, supra; Davis [v. State, 44 So.3d 1118 (Ala.Crim.App.2009) ].”
Stanley, 143 So.3d at 330-31 (opinion on remand from the Alabama Supreme Court).
A review of the circuit court’s order and the penalty-phase proceedings in the instant case demonstrates that the circuit court in fact considered the evidence of Woolfs low IQ. After considering that evidence, however, the circuit court did not find that it constituted a nonstatutory mitigating circumstance under the facts of this case. That decision was not in conflict with the cases cited by Woolf and was not erroneous. Stanley, supra.
II.
Woolf next argues that the circuit court erred “by failing to consider the non-statutory mitigating circumstance that Mr, Woolf would probably adapt well to prison life.” (Woolfs brief, p. 14.) Woolf points out that, “[djuring the penalty phase, [he] presented expert testimony” in that regard, but, he says, the trial court’s amended sentencing order does not mention that evidence. (Woolfs brief, p. 14.)
In Stanley, we stated the following regarding a similar claim:
“Stanley argues, in Issue III of his brief, that ‘the trial court failed to adequately consider and make findings regarding many of the non-statutory mitigating factors presented in violation of state and federal law.’ (Stanley’s brief, P- 21.) ...
[[Image here]]
“In Ex parte Lewis, 24 So.3d 540 (Ala. 2009), the Alabama Supreme Court stated:
“ ‘In Clark v. State, 896 So.2d 584 (Ala.Crim.App.2000), the Court of Criminal Appeals conducted a proper review of a trial court’s failure to find that proffered evidence constituted a *393 mitigating circumstance, stating, in pertinent part:
‘““The sentencing order shows that the trial court considered all of the mitigating evidence offered by-Clark. The trial court did not limit or restrict Clark in any way as to the evidence he presented or the arguments he made regarding mitigating circumstances. In its sentencing order, the trial court addressed each statutory mitigating circumstance listed in § 13A-5-51, Ala.Code 1975, and it determined that none of those circumstances existed under the evidence presented. Although the trial court did not list and make findings as to the existence or nonexistence of each nonstatutory mitigating circumstance offered by Clark, as noted above, such a listing is not required, and the trial court’s not making such findings indicates only that the trial court found the offered evidence not to be mitigating, not that the trial court did not consider this evidence. Clearly, the trial court considered Clark’s proffered evidence of mitigation but concluded that the evidence did not rise to the level of a mitigating circumstance. The trial court’s findings in this regard are supported by the record.
‘““Because it is clear from a review of the entire record that the trial court understood its duty to consider all the mitigating evidence presented by Clark, that the trial court did in fact consider all such evidence, and that the trial court’s findings are supported by the evidence, we find no error, plain or otherwise, in the trial court’s findings regarding the statutory and nonstatutory mitigating circumstances.”
“ ‘896 So.2d at 652-53 (emphasis added).’
“Ex parte Lems, 24 So.3d at 545. As Lewis and Clark establish, a trial court is not required to make an itemized list of the evidence it finds does not rise to the level of nonstatutory mitigating circumstances.
[[Image here]]
“ ‘ “It is not required that the evidence submitted by the accused as a non-statutory mitigating circumstance be weighed as a mitigating circumstance by the sentencer, in this case, the trial court; although consideration of all mitigating circumstances is required, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer. Cochran v. State, 500 So.2d 1161 (Ala.Crim.App.1984), aff'd in pertinent part, remanded on other part, 500 So.2d 1179 (Ala. 1985), aff'd on return to remand, 500 So.2d 1188 (Ala.Cr.App.), aff'd 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).”
“ ‘Haney v. State, 603 So.2d 368, 389 (Ala.Crim.App.1991), aff'd, 603 So.2d 412 (Ala.1992). See also Lewis v. State, 24 So.3d 480, 531 (Ala.Crim.App.2006); Yeomans v. State, 898 So.2d 878, 904 905 (Ala.Crim.App. 2004).’
“Spencer v. State, 58 So.3d 215, 255 (Ala. Crim.App.2008) (opinion on return to second remand).
“Before it reweighed the aggravating and mitigating circumstances in its amended sentencing order on remand, the trial court had determined that the testimony regarding Stanley’s family *394 history did not constitute mitigating evidence. Thus, in determining that no nonstatutory mitigating circumstances existed other than the jury’s recommendation of life imprisonment without the possibility of parole, the trial court clearly considered all the evidence presented by Stanley. Stanley has not demonstrated that he is entitled to relief on this claim. See Lems, supra; Spencer, supra; Clark, supra”
Stanley, 143 So.3d at 327-30 (opinion on remand from the Alabama Supreme Court).
Here, the circuit court did not prevent Woolf from presenting evidence regarding his purported ability to adapt well to prison life. The circuit court’s order, although it does not specifically list that evidence, indicates that the circuit court considered all the evidence Woolf offered in the penalty phase, Woolf is not entitled to relief on this claim. Stanley, supra.
III.
Woolf next challenges certain statements in the amended sentencing order that Woolf had “free will.” In relevant part, the amended sentencing order states:
“The Court ordered, received and reviewed a written presentence report. On February 4, 2011, in open Court, the State and [Woolf] were offered the right to present arguments concerning the pre-sentence report which each did as well as witnesses and other evidence concerning [Woolfs] sentence. The State and [Woolf] each presented argument concerning the existence of aggravating and mitigating circumstances and as to the appropriate sentence. At the sentencing hearing on February 4, 2011, [Woolfs] mother, Mrs. Lynn Tullos pleaded for her son’s life. From evidence presented during the trial, it is apparent that Mrs. Tullos did everything she could for her son in order to make him a productive member of society. [Woolfs] actions rest solely on him and no one else. Blame and guilt cannot and should not be heaped upon [Woolfs] mother, his upbringing, or a learning disability. As human beings with free wills, we are all responsible for our own acts and we must be held accountable for them.
“During the sentence hearing ..., Michael Woolf spoke. While he admitted to having killed Angel and Ayden, he claimed that it was not intentional. Put another way, he has not lived up to his responsibility as a human being, as a husband, and above all as a father. He has refused to take legal and moral responsibility for his actions.
“In order that the Court might fully consider the evidence presented at the sentencing hearing the Court recessed the February 4, 2011, sentencing hearing and continued it until February 17, 2011. The Court has considered all the evidence presented at trial, in the pre-sentence report and at the sentencing hearing....”
(Record on Return to Remand, C. 128-29.) Following these statements, the amended sentencing order then recounts the facts of the case and provides a detailed examination of the aggravating circumstances and mitigating circumstances in the case.
Woolf contends that the statements regarding “free will” in the above-quoted portion of the amended sentencing order demonstrate that the circuit court did not “consider fully” the evidence offered in mitigation. He argues further that those statements indicate that the circuit court “denied [Woolf] the individualized sentencing the law demands.” We disagree.
As the State points out, Woolfs counsel mentioned these statements after the circuit court read its sentencing order at the *395 hearing on May 15, 2014; specifically, the following exchange occurred:
“[COUNSEL FOR WOOLF]: Judge, I just — We’d like to state for the record our objection to this Court’s failure to take appropriate notice of a couple of categories of mitigation.... including Mr. Woolfs family background and his diminished intellectual capacity....
“THE COURT: Well I may not have said it clear enough. But I did take into account his intellectual background. We had testimony from his expert that gave him a 74 IQ, and kind of went into pretty detail on that. And you’re saying failed to recognize it. I got you. It was contravening testimony. But I did listen to it. I just did not accept it.
[[Image here]]
“THE COURT: I’m sorry. What was the other one.... the other non-statutory.
“[COUNSEL FOR WOOLF]: His family history, Your Honor. I believe that there was testimony that discussed the difficulties that Mr. Woolf faced after his parents had been divorced and the lack of emotional capacity on his biological father’s side that sort of affected Mr. Woolfs development....
“THE COURT: Hold on just a second. I may not have put it as clearly but I spent some time looking at that so hold on just a second. And a lot of that came in through Mrs. Tullos because I really did feel very sorry for her when she explained in detail what she had gone through trying to do these various things for her son. And where things fell off the wagon, who knows.
“[COUNSEL FOR WOOLF]: I believe Your Honor referenced his free will at one point. It’s our contention that free will would not be — undercut his mitigation in any sense. Disregarding this Court’s personal philosophy—
“THE COURT: That wasn’t in the mitigation part.
“I actually found that Mrs. Tullos in her description of the learning disabilities and the problems he faced in school and just in general and that something was wrong with him, that that was a non-statutory mitigating circumstance that I considered.
“So I may not have expressed it well enough for you but-I did consider that. You’re saying it one way and I’m saying it a different way. But I have a clear recollection of the woman testifying and I found that that existed.”
(Record on Return to Remand, R. 26-29.)
In view of the totality of the circuit court’s amended sentencing order and the penalty-phase proceedings, Woolfs claim challenging the circuit court’s statements about “free will” and human responsibility and accountability is without merit.
IV.
Because we were remanding this case, this Court previously pretermitted a plain-error review of Woolfs sentencing proceedings as well as a review pursuant to § 13A-5-53, Ala.Code 1975.
The record does not indicate that Woolfs sentence of death was imposed as the result of the influence of passion, prejudice, or an other arbitrary factor. § 13A-5-53(b)(1), Ala.Code 1975.
Additionally, the record supports the circuit court’s findings concerning the aggravating circumstances and the mitigating circumstances, and the circuit court correctly found that the aggravating circumstances outweighed the mitigating circumstances. The circuit court’s amended sentencing order shows that it did not improperly weigh the aggravating circumstances and the mitigating circumstances *396 and that it correctly sentenced Woolf to death.
After independently weighing the aggravating circumstances and the mitigating circumstances, this Court concludes that Woolfs sentence of death is appropriate. § 13A-5-53(b)(2), Ala.Code 1975.
Further, considering both the crime and the defendant, Woolfs death sentence is neither excessive nor disproportionate, to the penalties imposed in similar cases. § 13A-5-53(b)(3), Ala.Code 1975. See, e.g., Luong v. State, 199 So.3d 173 (Ala. Crim.App.2015) (murder of four children all under the age of 14 years); Gobble v. State, 104 So.3d 920 (Ala.Crim.App.2010) (murder of six-month old son); Johnson v. State, 40 So.3d 753 (Ala.Crim.App.2009) (murder of six-month old son); Blackmon v. State, 7 So.3d 397 (Ala.Crim.App.2005) (murder of two-year-old daughter); Yeomans v. State, 898 So.2d 878 (Ala.Crim.App.2004) (murder of wife and her parents).
Finally, we have reviewed Woolfs sentencing proceedings pursuant to Rule 45A, Ala. R.App. P., and have searched the entire proceedings for any plain error or defect that has or probably has adversely affected any of Woolfs substantial rights. We have found no such plain error or defect.
Accordingly, Woolfs sentence of death is due to be, and is hereby, affirmed.
AFFIRMED AS TO SENTENCING.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

 Note from the' reporter of decisions: On March 19, 2015, the Court of Criminal Appeals remanded this case by order for clarification of the sentencing order submitted by the trial court on remand.

. Judge Joseph Johnston presided over Woolf’s trial and sentencing and entered the amended sentencing order on the first remand. Following our second remand on March 19, 2015, Judge Johnston entered an order on March 23, 2015, setting the matter for a hearing on April 8, 2015.
On April 8, 2015, Judge James C. Wood entered an order continuing the matter until April 13, 2015. On April 13, 2015, Judge Wood conducted a hearing at which Woolf, Woolf's counsel, and counsel for the State were present. According to a discussion between Judge Wood and the attorneys present at that hearing, Judge Johnston had either retired or was in the process of retiring at the time of the hearing. (Record on Return to Second Remand, R. 12.) Judge Wood admitted into evidence an affidavit dated April 9, 2015, from Judge Johnston in which Judge Johnston stated that the written amended sentencing order included a clerical error. Judge Johnston’s affidavit states that "the amended sentencing order should read as follows: '1. [Woolf] was under a sentence of imprisonment when he committed the capital offenses. Therefore, Alabama Code Section 13A-5-49(l) does exist and is being considered.” (Record on Return to Second Remand, C. 25.) Further, Judge Jphnston stated in his affidavit that he "did, in fact, find that [Woolf] was under a sentence of imprisonment when he committed the capital offenses.’ ”